**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LESLIE DENNIS MANNON and SHELIA LYNN MANNON, | ) | Case No. 6:26-cv-03518-MDH |
| Plaintiffs, | ) | |
| v. | ) | |
| CITY OF LEBANON, MISSOURI, a municipal corporation, | ) | |
| Defendant. | ) | |

**SECOND AMENDED COMPLAINT FOR DAMAGES, TAKING WITHOUT JUST COMPENSATION, AND INVERSE CONDEMNATION**
**JURY TRIAL DEMANDED**

COME NOW Plaintiffs Leslie Dennis Mannon and Shelia Lynn Mannon (collectively, "Plaintiffs"), and, with leave of Court granted pursuant to Federal Rule of Civil Procedure 15(a)(2), for their Second Amended Complaint against Defendant City of Lebanon, Missouri ("the City"), which supersedes the First Amended Complaint filed October 16, 2026, state as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Leslie Dennis Mannon and Shelia Lynn Mannon are individuals who, at all relevant times, have jointly owned and resided upon real property consisting of approximately 7.91 acres located at 25641 Ortega Drive, Lebanon, Laclede County, Missouri, at the corner of Goldenwood Road and Ortega Drive (the "Property"), being Laclede County Parcel No. 132003013002004006, acquired by deed recorded as Instrument No. 2023-3219, Laclede County Recorder of Deeds, and more particularly described as: Part of Lots 7, 8, and 9, Stovall's 2nd Subdivision, Section 3, Township 34, Range 16, Laclede County, Missouri, containing 7.91 acres, more or less.

2. Defendant City of Lebanon is a municipal corporation organized under the laws of the State of Missouri and vested with the power of eminent domain.

3. This Court has subject-matter jurisdiction over Count II of this Second Amended Complaint pursuant to 28 U.S.C. § 1331, because that count arises under the Fifth Amendment to the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment, and 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Count I pursuant to 28 U.S.C. § 1367(a), because that claim arises from the same case or controversy as Count II and forms part of the same nucleus of operative fact.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant City of Lebanon resides in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims, and the real property that is the subject of this action, occurred and is situated in Laclede County, Missouri, within the Western District of Missouri, Southern Division.

5. Plaintiffs gave the City written notice of their claim by email dated July 16, 2025, addressed to Mayor Jared Carr, the City Administrator, and the members of the City Council, and by certified-mail letter dated August 6, 2025, addressed to the City of Lebanon, 401 South Jefferson Avenue, Lebanon, Missouri 65536. No statutory pre-suit notice bars this action: § 82.210, RSMo, applies only to cities of 100,000 or more population and to injuries from street, sidewalk, and similar defects, and therefore does not apply to the City of Lebanon; § 77.600, RSMo, the notice statute applicable to third-class cities such as Lebanon, likewise applies only to injuries from a defect or unsafe condition of a bridge, boulevard, street, sidewalk, or thoroughfare, not to property damage from a

stormwater drainage system, and therefore likewise does not apply; and a claim for inverse condemnation under Article I, § 26 is self-enforcing and requires no statutory presentment. Plaintiffs' notices are provided out of an abundance of caution. Felder v. Casey, 487 U.S. 131, 138 (1988), holds specifically that a state notice-of-claim statute is preempted when a § 1983 action is brought in state court, and it noted that, with one exception, the lower federal courts had concluded that such provisions are inapplicable to § 1983 actions brought in federal court, see id. at 140. The Supreme Court has also independently and separately held that exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983. Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516 (1982).

**FACTS COMMON TO ALL COUNTS**

6. The Property comprises approximately 7.91 acres at the corner of Goldenwood Road and Ortega Drive. Plaintiffs acquired and have held the Property for residential use, for agricultural activities, and for metal-fabrication work.

7. Upstream of and adjacent to the Property, the City owns and controls public street and park infrastructure, including the Goldenwood Road corridor and adjoining city open space, the watershed of which drains across the Property.

8. Beginning in or about 2023, the City undertook a public-works project to widen Goldenwood Road and to install curb, gutter, and a stormwater drainage system of inlets and pipes (the "Project").

9. The Project materially altered the rate, velocity, and path of surface-water runoff discharged toward and across the Property, and re-routed runoff directly onto the Property that would not otherwise have reached it. Among other things, the Project (a) increased impervious area; (b) collected street runoff in curb inlets and pipes and discharged it in

concentrated form; (c) nearly eliminated natural absorption and slowing that previously occurred; and (d) re-routed runoff to the west of Ortega Drive so that it discharges directly onto the Property, rather than draining across city-owned open space that had previously acted as a buffer.

10. As a direct result, surface water is discharged onto the Property at a materially greater rate, velocity, and depth, and over a materially larger inundation area, than under pre-Project conditions, causing recurrent flooding, erosion, and sediment deposition, and rendering substantial portions of the Property unusable. Before the Project, the Property did not flood in this manner, and the City's Director of Public Works, Richard Shockley, acknowledged in a recorded July 26, 2024 meeting with Plaintiffs that the Property is not in a flood zone. The City's own engineer has acknowledged in writing that the overall volume of water reaching the Property is more-or-less staying the same, but that the rate at which it arrives has changed as a direct result of the Project.

11. The City's own engineer, Derrick J. Estell, P.E., of Toth & Associates (the firm that designed the Project), acknowledged in writing on August 2, 2024, in an email to the City's Director of Public Works, Richard Shockley, that by enclosing the stormwater in smooth pipes and adding impervious area, the Project "inevitably increases the velocity" and would "increase the rate/velocity at which water leaves the project area," such that "the rate at which it gets there has changed." A true copy of that email is attached as Exhibit B.

12. A licensed professional engineer, Todd Wagner, P.E. (Wagner & Associates, LLC), prepared a stormwater engineering report, finalized, signed, and sealed on July 3, 2026 (project 2025-025), which, through hydrologic modeling, concludes that the Project caused significant increases in stormwater runoff rate onto the Property at ordinary, frequent

rainfall recurrence intervals (including 2-year and 5-year storms, not only extreme or record events) and, under modeled 100-year storm conditions, increased the inundation area, flow depth, and velocity, and recommends remediation (a detention basin and re-piping) with cost estimates. Critically, the report concludes that the western portion of the Project was designed to divert runoff to the west of Ortega Drive directly onto the Property, establishing that the diversion is the product of the Project's design, not of natural forces. The finalized, signed, and sealed report is attached as Exhibit A and incorporated herein. The City's own final engineering plan set for the Project, prepared by Toth & Associates, Inc. and bearing a Missouri professional engineer's seal (PE-2011000927), is attached as Exhibit C and further corroborates that the diversion of stormwater onto the Property was a function of the Project's design, not an accident of natural forces.

13. Representatives of the City have acknowledged the City's responsibility, including statements by the City Administrator acknowledging fault and, upon information and belief, by a member of the City Council. On July 14, 2025, five days after its Park Board received a "Goldenwood Road and Cobb Drive Stormwater Update," the City Council appropriated $284,697.30 to pave a parking lot and build pickleball and basketball courts in Atchley Park, the City park adjoining the Property through which the diverted water flows (Council Bill No. 6869, Ordinance No. 7111), while the only funds the City committed to the Goldenwood drainage problem in 2025 were $35,800 for a feasibility study approved August 25, 2025 (Council Bill No. 6909, Ordinance No. 7151), with no remediation planned before 2027. These facts demonstrate the City's notice of, and unreasonable failure to address, the drainage harm.

14. In August 2026, the City performed channel-lining work in the city park adjacent to the Property under a separate project, the Winfrey Detention Basin (Project No. C25-00573). The plan set for that project, which the City released in response to Plaintiffs' Sunshine Law request, states that the date of survey is September 16, 2025, and refers to a geotechnical engineering report dated December 8, 2025, each many months before Plaintiffs' July 2026 demand letter. Upon information and belief, that project's engineered drainage area does not abate the diversion of surface water onto the Property, because the project's plans do not depict the Property's parcel boundary. Upon information and belief, the City has represented that it does not intend to undertake remediation of the diversion onto the Property before 2027.

15. In response to a Sunshine Law request, the City stated in writing that it has no documents reflecting any grading, land-disturbance, stormwater, or NPDES erosion and sediment control permit issued for the August 2026 channel-lining work, an instance of undocumented erosion-control compliance for stormwater work affecting the drainage onto the Property in addition to the Project itself.

16. In response to the same Sunshine Law request, the City confirmed in writing that the City's Parks Director authorized the August 2026 channel-lining work under a contractor, Fulkerson Excavating.

17. As documented by dated photographs, the channel-lining work was completed without reseeding the disturbed soil surrounding the discharge point, leaving bare, unseeded ground at the point where stormwater is directed toward the Property.

18. Wagner's July 3, 2026 report further concludes that (a) the City has not complied with its own municipal code requirements for stormwater detention associated with the Project's

increase in impervious area, and (b) based on his review of the available documentation, photographs, and site inspection, there is no evidence the City implemented or maintained the erosion and sediment control best management practices required by its state National Pollutant Discharge Elimination System (NPDES) General Construction Permit and associated Stormwater Pollution Prevention Plan (SWPPP), either during or after construction of the Project.

19. The flooding is recurrent and continues with each significant rainfall. It is abatable by the remediation identified in Exhibit A.

20. As a direct and proximate result of the City's conduct, the flooding prevented Plaintiffs from developing and using the Property for its intended purpose, including construction of a planned 60′ × 100′ fabrication shop, and forced Plaintiffs to mitigate by conducting their metal-fabrication work out of a smaller existing barn with materially less usable working space. Plaintiffs have suffered loss of the use and enjoyment of the Property, including the loss of the value of the use of the Property for the planned shop; loss of agricultural use, including Plaintiffs' plans to pasture horses on the flooded portion of the Property; out-of-pocket costs; and damage to the Property. Plaintiffs claim these losses in their capacity as owners of the Property, measured as set forth in Counts I and II below.

21. More than 30 days have elapsed since Plaintiffs served their written demand on the City by email on or about July 18, 2026, with delivery confirmed by certified mail on July 21, 2026, and the City has neither compensated Plaintiffs, commenced remediation of the diversion onto the Property, nor otherwise responded to the demand.

22. Plaintiffs estimate that approximately four of the Property's 7.91 acres, previously used and intended by Plaintiffs for pasturing horses and other agricultural use, have been

rendered unusable or unfit for that use during and after the recurrent flooding described above since 2023. The 2024 Cash Rent County Estimate published by the United States Department of Agriculture, National Agricultural Statistics Service, reports a cash rental rate of $25.00 per acre for pastureland in Laclede County, Missouri. This rate is one input for measuring the diminished value of the use of the affected acreage under the standard set forth in Count I below; Plaintiffs do not thereby limit their claim for agricultural loss to any particular calculation, and their damages remain to be proven at trial.

23. Plaintiffs' intended use of the Property for a metal-fabrication shop was concrete and non-speculative, not merely aspirational. Plaintiff Leslie Dennis Mannon organized Mannon Metal Works LLC, a Missouri limited liability company of which he is the member, and obtained a federal Employer Identification Number for it. Plaintiff Leslie Dennis Mannon personally purchased a plasma cutter and welding and gas equipment for the planned shop, and the company financed a CNC plasma cutting table package, including its CNC automation kit, under an equipment finance agreement signed March 17, 2026, as evidenced by invoices, financing records, and a signed bill of sale in Plaintiffs' possession. Plaintiffs also solicited written requests for proposal from commercial contractors, including Koehn Buildings and Friga Construction, for construction of the planned 60′ × 100′ shop, providing each contractor with site specifications including eave height, overhead door count, insulation, and concrete apron requirements. These facts are alleged to show that Plaintiffs' intended use of the Property was genuine and underway. Mannon Metal Works LLC is not a party to this action, and Plaintiffs do not seek recovery in this action for any loss sustained by that company.

24. Wagner's July 3, 2026 report further estimates that remediation sufficient to abate the diversion onto the Property, a regional stormwater detention basin and redirection of drainage away from the Property, would cost approximately $170,000, as set forth in Exhibit A. Wagner's estimate is offered as evidence of the feasibility, approximate magnitude, and continuing, abatable character of the harm alleged herein; Plaintiffs' damages are not limited to this figure and remain to be proven at trial.

**COUNT I: INVERSE CONDEMNATION**

(Article I, § 26, Missouri Constitution)

25. Plaintiffs incorporate paragraphs 1–24 as though fully set forth herein.

26. Article I, § 26 of the Missouri Constitution provides that private property shall not be taken or damaged for public use without just compensation. The provision is self-enforcing.

27. The City is an entity vested with the power of eminent domain. The Project is a public-works project undertaken for public use.

28. Under Missouri's reasonable-use rule, a landowner has a duty in the use of its land not to needlessly or negligently injure, by surface water, the land of others. Heins Implement Co. v. Mo. Highway & Transp. Comm'n, 859 S.W.2d 681, 690 (Mo. banc 1993), abrogated on other grounds by Southers v. City of Farmington, 263 S.W.3d 603, 614 n.13 (Mo. banc 2008). As a result of the Project, the City has caused an unreasonable diversion of surface waters onto the Property in violation of that duty. As the engineering evidence establishes, this diversion is the product of the Project's design (the system was engineered to collect, concentrate, and re-route surface water directly onto the Property) and is not the result of natural forces. The unreasonable diversion of surface waters by a public-works project of an entity having the power of eminent domain, whether by design or by mistake, constitutes

a compensable damaging of private property for which the proper remedy is inverse condemnation. Heins, 859 S.W.2d at 691; cf. Bettinger v. City of Springfield, 158 S.W.3d 814, 820 (Mo. App. S.D. 2005) (no inverse-condemnation liability where flooding resulted from an extraordinary, record rainfall event rather than the entity's design or mistake); Ferguson v. City of Sunrise Beach, 710 S.W.3d 620 (Mo. App. S.D. 2025) ("Inverse condemnation is the exclusive and proper remedy for an alleged nuisance or other damage caused to private property by an entity having the power of eminent domain."). Indeed, Heins holds that when private property is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is inverse condemnation, and that the public entity's negligence in causing the harm "is immaterial" to that remedy: the trial court there did not err in dropping the plaintiffs' nuisance and negligence claims while retaining their inverse condemnation claims against an entity, like the City here, empowered to exercise eminent domain. Heins, 859 S.W.2d at 693-94.

29. The damage is the direct and proximate result of the Project and its design, and is not the result of natural forces: the Project collected, concentrated, and re-routed surface water that would not otherwise have reached the Property, increasing the rate, velocity, and depth at which it arrives.

30. The diversion and resulting damage are recurrent and continuing in that they recur with rainfall and are abatable by reasonable remediation, including the remediation identified in Exhibit A. Missouri law measures inverse-condemnation damages differently depending on whether the harm is permanent or temporary: permanent damage is measured by the diminution in fair market value, while temporary or continuing damage is measured by the diminution in the value of the use and occupancy of the property for the period damaged.

Byrom v. Little Blue Valley Sewer Dist., 16 S.W.3d 573, 577-78 (Mo. banc 2000). Plaintiffs' damages should be measured to reflect the continuing, recurrent character of the harm alleged here.

31. Plaintiffs have been damaged and are entitled to just compensation. To the extent the diversion is treated as a permanent taking, damages are measured by the diminution in the fair market value of the Property or the reasonable cost of restoration. To the extent the diversion is treated as a temporary and continuing taking, damages are measured by the diminution in the value of the use and occupancy of the Property during the continuance of the harm. In either case, Plaintiffs are entitled to damages in an amount to be proven at trial.

## COUNT II: TAKING WITHOUT JUST COMPENSATION

(U.S. Const. amend. V, as applied through the Fourteenth Amendment; 42 U.S.C. § 1983)

32. Plaintiffs incorporate paragraphs 1 through 24 as though fully set forth herein.

33. The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the City through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation. This requirement is self-executing and provides a direct cause of action under 42 U.S.C. § 1983 for its violation by a municipality.

34. The City, at all relevant times, acted under color of state law in designing, approving, funding, constructing, and maintaining the Project and the drainage infrastructure at issue.

35. The taking alleged herein resulted from an official policy of the City, and not from the unauthorized act of a single employee. The Lebanon City Council, the City's legislative body and final policymaking authority for the authorization and funding of public-works

projects, authorized and funded the Project, including the drainage design described in paragraphs 9-12 above, and on June 24, 2024 approved Council Bill No. 6702 (Ordinance No. 6946) authorizing an increase in material costs to complete the construction of the street and sidewalk improvements on Goldenwood Road. A municipality may be held liable under 42 U.S.C. § 1983 for a single decision by its properly constituted legislative body, because such a decision constitutes an act of official government policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) (local governing bodies may be sued directly under § 1983 where the action alleged to be unconstitutional implements or executes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). Toth & Associates, Inc. served only as the City's retained design consultant and is not itself a City official; its final plan set, attached as Exhibit C, was accepted and implemented by the City as the design of record for the Project undertaken pursuant to the Council's authorization and funding of the Project.

36. In the alternative, Plaintiffs allege that the City ratified a known and ongoing harm to the Property. As alleged in paragraph 13 above, City officials, including the City Administrator and, upon information and belief, a member of the City Council, acknowledged the City's responsibility for the flooding after being informed of it, and the City nonetheless, five days after its Park Board received a Goldenwood Road stormwater update, appropriated $284,697.30 for a parking lot and pickleball and basketball courts in the adjoining City park while committing only $35,800 to study the Goldenwood drainage problem. As alleged in paragraph 14 above, upon information and belief, the City has represented that it does not intend to undertake remediation of the diversion onto the Property before 2027.

These facts, taken together, show a knowing continuation of the harm after the City's own officials acknowledged responsibility for it, and support municipal liability on this alternative theory under Monell, in addition to the official-policy theory pleaded in paragraph 35 above.

37. As set forth in paragraphs 9-12 above, the Project caused an unreasonable diversion of surface water directly onto the Property by design, and that diversion recurs with ordinary, frequent rainfall. Recurrent government-induced flooding, even if of finite duration, is not categorically exempt from Takings Clause liability. Arkansas Game & Fish Comm'n v. United States, 568 U.S. 23, 27 (2012). Plaintiffs' claim is ripe for adjudication in this Court without regard to the availability or exhaustion of any state compensation procedure. Knick v. Township of Scott, 588 U.S. 180 (2019).

38. Plaintiffs have been damaged and are entitled to just compensation under the Fifth Amendment, measured by the diminution in the fair market value of the Property or the reasonable cost of restoration, together with damages for the loss of use of the Property, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

A. On Count I, enter judgment against the City for just compensation for the taking and damaging of the Property, including damages reflecting the continuing and recurrent character of the harm, in a fair and reasonable amount to be determined at trial and in excess of $25,000;

B. On Count II, enter judgment against the City for just compensation and damages for the taking of the Property in violation of the Fifth Amendment, pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial;

C. Enter a declaratory judgment that the City's diversion of surface water onto the Property constitutes a compensable damaging of private property under Article I, § 26 of the Missouri Constitution and an unconstitutional taking under the Fifth Amendment to the United States Constitution;

D. Award Plaintiffs their costs, pre-judgment and post-judgment interest as allowed by law, attorney's fees under 42 U.S.C. § 1988 to the extent Plaintiffs retain counsel, and such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Leslie Dennis Mannon
______________________________
Leslie Dennis Mannon, Pro Se
25641 Ortega Drive, Lebanon, MO 65536
573-703-3727
dmansr@gmail.com

Shelia Lynn Mannon
______________________________
Shelia Lynn Mannon, Pro Se
25641 Ortega Drive, Lebanon, MO 65536
573-620-2016
shelia.mannon@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that I submitted the foregoing Second Amended Complaint, with Exhibits A, B, and C, to the Clerk of the Court through the Court's Electronic Document Submission System for filing in the CM/ECF system on the date it was submitted, and that the CM/ECF system will

send a notice of electronic filing to counsel of record for Defendant City of Lebanon, Missouri, a registered CM/ECF user: Rachel A. Riso, Spencer Fane LLP, 2144 East Republic Road, Suite B300, Springfield, Missouri 65804, rriso@spencerfane.com.

Leslie Dennis Mannon, Pro Se